PEARSON, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| JESSICA MATUSKY, *et al.*, | ) |
| | ) CASE NO. 4:17CV1535 |
| Plaintiffs, | ) |
| | ) |
| v. | ) JUDGE BENITA Y. PEARSON |
| | ) |
| AVALON HOLDINGS | ) |
| CORPORATION, *et al.*, | ) **MEMORANDUM OF OPINION** |
| | ) **AND ORDER** |
| Defendants. | ) [Resolving ECF No. 40] |

Pending is Defendants Avalon Holdings Corporation, The Avalon Resort and Spa LLC, Avalon Golf and Country Club, Inc., Avalon Country Club at Sharon, Inc., and Ronald Klingle's Motion for Summary Judgment (ECF No. 40). The Court has been advised, having reviewed the record, the parties' briefs, and the applicable law. For the reasons set forth below, the motion is granted.

**I. Stipulated Facts and Background**

**A.**

The stipulated facts[1] are as follows:

1. In the three-year period preceding the filing of the Class and Collective Action Complaint (ECF No. 1), Defendants Avalon Holdings Corporation, The Avalon Resort and Spa LLC, Avalon Golf and Country Club, Inc., Avalon Country Club at Sharon, Inc., and Ronald

---

[1] *See* Joint Stipulations of Fact (ECF No. 30).

Klingle (collectively, "Defendants") employed approximately 242 people as banquet servers, banquet bartenders, and banquet bussers.

2. Plaintiff Jessica Matusky worked for Defendants as a banquet server, a banquet bartender, and as a set-up person from October 2014 to April 2017.

3. While working as a banquet server, Matusky was paid at a rate of $6.50 per hour and Defendants used a tip credit to make up the difference between that rate and the minimum wage.

4. While working as a banquet bartender, Matusky was paid at a rate of $4.05 or $4.08 per hour, depending upon the Ohio minimum wage then in effect, during the time she worked for Defendants and Defendants used a tip credit to make up the difference between this rate and the minimum wage.

5. Plaintiff John Stahl worked for Defendants as a banquet server or busser[2] and a set-up person from May, 2015 to May, 2017.

6. While working as a banquet server, Stahl was paid at a rate of $6.50 per hour and Defendants used a tip credit to make up the difference between that rate and the minimum wage.

7. Plaintiff Zackary Kerr worked for Defendants in various positions, including banquet server and banquet bartender from November, 2014 to present.

**B.**

---

[2] Throughout their depositions, Plaintiffs made no distinction between banquet servers and banquet bussers with the exception that banquet servers are female and banquet bussers are male. *See* Defendants' Amended Memorandum in Support (ECF No. 45-1) at PageID #: 653 n. 2. Therefore, the Court will use the term "banquet servers" to refer to the tipped occupations of banquet servers and banquet bussers throughout this Memorandum of Opinion and Order.

(4:17CV1535)

Plaintiffs base their Amended Collective Action Complaint (ECF No. 31-1) on the fact that, as banquet employees, they were required to perform final preparatory work prior to and clean up after events held at Defendants' resorts and Defendants took a tip credit on their wages for this time. As admitted by Plaintiffs, restaurants are very different from banquet halls. Deposition of Jessica Matusky (ECF No. 27-1) at PageID #: 168, Pg. 12.

There are fundamental differences between the banquet setting and the restaurant setting. In a restaurant, the tables and chairs are in place before the customer arrives for the first time and are usually set with napkins, glasses, and silverware. Declaration of Ronald Klingle (ECF No. 39-1) at PageID #: 513-14, ¶¶ 4-5. The set-up of the restaurant is the same day to day. ECF No. 39-1 at PageID #: 514, ¶ 6. The restaurant server provides the customer with a menu, takes an order for food and drinks, serves the food and drinks to the customer, clears any dirty dishes or glasses, and provides the customer with a final bill. ECF No. 39-1 at PageID #: 514, ¶ 7. The final bill includes a charge for each order of food and each drink and the applicable state tax. ECF No. 39-1 at PageID #: 514, ¶ 8. The customer pays the bill and adds a tip on top of the total amount. The tip is based on a percentage of the total bill, which is usually between 10 to 20 percent. ECF No. 39-1 at PageID #: 514, ¶ 9. The amount of tips a restaurant server receives can increase based on the number of customers they serve and the amount of food and drink each customer orders. ECF No. 39-1 at PageID #: 514, ¶ 10.

In the banquet setting, the party host chooses a banquet facility months in advance of the event when the room where the event is to take place is generally empty of any chairs, tables, or

3

(4:17CV1535)

decorations. The bar in the room is not stocked with liquor, glasses or fruit. ECF No. 39-1 at PageID #: 514, ¶ 11. The party host makes selections regarding the set-up of the room and the decorations for the room, including the chairs, the linens for the table, the place-settings, the types of tables, the type of liquor and drinks to be served at the event, how the food is served, and, in some cases, special requests such as a stage or a dance floor. ECF No. 39-1 at PageID #: 514-15, ¶ 12. The customer determines the amount of food and drinks based on the total number of guests, so the menu for the event is set early. ECF No. 39-1 at PageID #: 515, ¶ 13. Because every event has a different number of guests and different needs to cater to, the set-up for each event is significantly different. As a result, the rooms do not remain set between events but are torn down and then re-set for the next event. ECF No. 39-1 at PageID #: 515, ¶ 14.

Recognizing this process is necessary for every event, Defendants charge the customer for the set-up work that must be completed before the event and the clean-up after the event. ECF No. 39-1 at PageID #: 515, ¶¶ 15-16, 19. At the end of the event, the customer, *i.e.*, the party host, is presented with a bill that contains all of the charges for the event. These charges include a charge for each food item, a charge for each drink, a charge for set-up, a charge for the room rental, and a charge for any special requests, including valets, attendants, DJs or stages. No part of the event is free and everything is charged back to the customer. ECF No. 39-1 at PageID #: 515, ¶ 16. The bill for the customer includes a total charge and a line to include an optional tip. ECF No. 39-1 at PageID #: 515, ¶ 17; Sample Receipts of Banquet Events (ECF No. 39-2; Supplemental Declaration of Ronald Klingle (ECF No. 44-1) at PageID #: 629-30, ¶¶ 4-5; Sample Final Bills for Banquet Events (ECF No. 44-1). When a customer leaves a tip, it is based

(4:17CV1535)

on a percentage of the total charge, which is usually ten to twenty percent of the total. This tip is then divided among the tipped banquet employees, *i.e.*, the banquet servers and bartenders. ECF No. 39-1 at PageID #: 515, ¶ 18.

On occasion, the party host does not provide a tip or the tip that is provided is insufficient to cover Defendants' tip credit. In those instances, Defendants pay the employee an additional amount to ensure that each banquet employee is paid at least the minimum wage for all hours worked in a workweek. Thus, no banquet employee makes less than minimum wage for all hours worked. ECF No. 39-1 at PageID #: 516, ¶ 20.

Unlike restaurant employees, a banquet employee's tip does not come from the individual guests attending the event, but from the party host. The amount of the food is preselected, so the guests cannot increase the bill by ordering more food. As a result, a banquet server's tips do not increase based on the amount of food or guests she serves. ECF No. 39-1 at PageID #: 516, ¶ 21.

One exception to this is banquet bartenders, who may be able to increase tips based on the amount of drinks and guests served, if a tip jar is allowed. If there is a tip jar, individual guests can tip the bartenders based on the number of drinks they order. At the end of the event, bartenders are given the option of adding the tip jar amount to the total tip and receiving a portion of the total tip or dividing the tip jar amount amongst themselves. ECF No. 39-1 at PageID #: 516, ¶ 22. In most cases, banquet bartenders decide to split the tip jar amongst themselves and do not participate in the overall tip because it results in more money for each of them. ECF No. 39-1 at PageID #: 516, ¶ 23. If a tip jar is not allowed, the customer includes a

(4:17CV1535)

tip of $75 per bartender in the total, which is provided to the bartender as a tip.[3] ECF No. 39-1 at PageID #: 517, ¶ 24.

## C.

Matusky, Stahl, and Kerr were all hired by Defendants to work in tipped occupations for which Defendants took a tip credit on their wages. ECF No. 27-1 at PageID #: 167-68, Pgs. 8-9; Deposition of John Stahl (ECF No. 27-2) at PageID #: 221, Pgs. 9-11; PageID #: 222-23, Pgs. 15-17; and, Deposition of Zackary Kerr (ECF No. 27-3) at PageID #: 273-74, Pgs. 11-13. As banquet servers, Matusky and Stahl were paid a pay rate of $6.50 per hour and Defendants used a tip credit to cover the difference between this pay rate and the applicable minimum wage rate.[4] ECF No. 27-1 at PageID #: 167-68, Pgs. 8-9; ECF No. 27-2 at PageID #: 223-24, Pgs. 20-22. Matusky and Kerr were paid between $4.05 and $4.08 per hour as banquet bartenders and Defendants used a tip credit to cover the minimum wage difference. ECF No. 27-1 at PageID #: 167-68, Pgs. 8-9; ECF No. 27-3 at PageID #: 286-87, Pgs. 61-66.[5]

---

[3] When Matusky and Kerr worked as bartenders and earned tips via the tip jar, they were supposed to declare those tips as cash tips in Defendants' time clock system. Matusky and Kerr only declared cash tips once. Therefore, for almost all of the time they worked as bartenders and took the tips from the tip jar, Matusky and Kerr were actually earning the minimum wage for their bartending duties because Defendants' system showed that they received no tip. ECF No. 39-1 at PageID #: 519, ¶ 42.

[4] By law, Defendants were only required to pay a tip rate of $2.83 per hour in Pennsylvania and a rate of $4.05 or $4.08 per hour in Ohio, depending on the Ohio minimum wage that was in effect.

[5] The banquet bartender rate fluctuated based upon the Ohio minimum wage in effect at the time.

(4:17CV1535)

During the period covered by this litigation, all three Plaintiffs made at or above the minimum wage in every workweek they worked for Defendants. ECF No. 39-1 at PageID #: 518, ¶ 33. In the case of Matusky, her average hourly rate was $11.44 and that rate increased to $12.94 per hour when factoring in only her tipped work. ECF No. 39-1 at PageID #: at 518, ¶ 35. Similarly, Stahl's average hourly rate was $11.06 and that rate increased to $12.28 per hour when factoring in only work for which Defendants took a tip credit. ECF No. 39-1 at PageID #: at 518, ¶ 36. And, in the case of Kerr, his average hourly rate was $12.80 and that rate increased to $15.87 when factoring in only his tipped work. ECF No. 39-1 at PageID #: 518, ¶ 37.[6]

As banquet servers and bartenders, Plaintiffs would work at catered events at Defendants' different locations. ECF No. 27-2 at PageID #: 221, Pgs. 9-10. Such events included corporate parties, weddings, baby/bridal showers, and anniversary parties. While the events would generally last from four to six hours, Plaintiffs would typically be scheduled to work two hours prior to the actual start of the event. ECF No. 27-1 at PageID #: 172-73, Pgs. 28-30; PageID #: 175, Pgs. 38-39; PageID #: 184-85, Pgs. 74-77; PageID #: 186-87, Pgs. 82-85; ECF No. 27-2 at PageID #: 225-26, Pgs. 28-30; and, ECF No. 27-3 at PageID #: 274-75, Pgs. 16-18. When they arrived prior to the event, they would clock-in under the appropriate tipped occupation on the time clock. ECF No. 27-1 at PageID #: 182-83, Pgs. 68-69. During the time prior to the start of

---

[6] Defendants note that all three Plaintiffs never declared any cash tips during the time period at issue, even though they clearly received some cash tips. ECF No. 45-1 at PageID #: 654 n. 5 (citing ECF No. 39-1 at PageID #: 518, ¶ 39). As a result, it is likely that their actual average rate of pay and tipped rate of pay are higher than what Defendants' records show.

7

the event, banquet servers, including Matusky and Stahl, would perform final preparatory work for the party, including setting up glassware, filling glasses with water, putting out china, installing decorations, preparing the cake and cookie tables, preparing the coffee stations, and general cleaning. ECF No. 27-1 at PageID #: 173-75, Pgs. 30-38; PageID #: 178-80, Pgs. 49-57; and ECF No. 27-2 at PageID #: 221-22, Pgs. 12-14; PageID #: 226, Pgs. 30-32. As banquet bartenders, Matusky and Kerr would clean and set up glasses, stock the bar with liquor, cut fruit for drinks, retrieve ice for the bar, set-up a pop-up bar if requested, prepare the tip jar, napkin caddies and bottle openers, and clean the bar area prior to the start of the event. ECF No. 27-1 at PageID #: 173-75, Pgs. 30-38; PageID #: 178-80, Pgs. 49-57; and ECF No. 27-3 at PageID #: 275-78, Pgs. 18-29. After the event, Plaintiffs would remove decorations, tear down the table and chairs, take out any trash, and clean up the event area. ECF No. 27-1 at PageID #: 178-79, Pgs. 52-53; PageID #: 184-85, Pgs. 74-77; ECF No. 27-2 at PageID #: 225-226, Pgs. 28-30; and, ECF No. 27-3 at PageID #: 278, Pgs. 30-32. For work performed on the same day both before and after the event, Defendants took a tip credit on Plaintiffs' wages. ECF No. 27-3 at PageID #: 274-75, Pgs. 16-18.

All banquet employees are paid minimum wage for set-up work performed the day before and the day after an event. ECF No. 39-1 at PageID #: 518, ¶ 38. Defendants have a category in their timekeeping system for set-up and pay employees minimum wage for time spent clocked-in under this category. Matusky Timesheet (ECF No. 29-4); Matusky Minimum Wage Calculation Sheet (ECF No. 29-3) (showing regular minimum wage of $8.10 paid for "Setup -Banquet"); Stahl Timesheets (ECF Nos. 29-8, 29-11, and 29-14); and, Stahl Minimum Wage Calculation

Sheets (ECF Nos. 29-7, 29-10, and 29-13 (showing regular minimum wage of $8.10 paid for "Setup -Banquet"). Events hosted at Defendants' facilities are not only set-up the day of the event. ECF No. 44-1 at PageID #: 630, ¶6. Rather, employees are often scheduled days before the event to set-up tables and chairs in the banquet hall. ECF No. 44-1 at PageID #: 630, ¶7. When employees are scheduled on these days, they are required to clock-in under set-up and are paid the minimum wage. ECF No. 44-1 at PageID #: 630, ¶ 8. Defendants do not take a tip-credit for this time. ECF No. 44-1 at PageID #: 631, ¶ 11. Defendants do this for administrative purposes. ECF No. 44-1 at PageID #: 630, ¶ 8. The payment of minimum wage for some set-up work does not transform a tipped duty into a non-tipped duty.

### D.

In July 2017, Plaintiff Jessica Matusky brought this (1) collective action under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, for minimum wage pay and (2) class action under the Ohio Minimum Fair Wage Standards Act and Pennsylvania Minimum Wage Act for minimum wage pay. ECF No. 1. An Amended Collective Action Complaint (ECF No. 31-1), which added Opt-in Plaintiffs John Stahl and Zackary Kerr, was deemed served and filed as of February 22, 2018. *See* Order (ECF No. 36). The Amended Collective Action Complaint (ECF No. 31-1) alleges additional facts obtained through discovery. The amended pleading also reduced the number of allegations and claims at issue by removing the Fed. R. Civ. P. 23 class action allegations entirely. It narrows the focus of the case at bar to tip credit violations, already alleged in the Class and Collective Action Complaint (ECF No. 1), for both regular and overtime

(4:17CV1535)

hours.[7] It further restricts the class definition to the tipped banquet servers at Defendants' four banquet facilities in Ohio and Pennsylvania based on the testimony of Avalon Holding's designated Fed. R. Civ. P. 30(b)(6) representative that there are other tipped employees employed elsewhere in Defendants' organization. Plaintiffs' FLSA claims are based on their allegations that Defendants improperly take a tip credit the day of an event for work they perform before and after the banquet or party. Plaintiffs assert that, during those times, the duties they perform are non-tipped duties and that work takes up more than 20 percent of their workweek. ECF No. 31-1 at PageID #: 440, ¶ 34.

## II. Standard of Review

Summary judgment is appropriately granted when the pleadings, the discovery and disclosure materials on file, and any affidavits show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also* *Johnson v. Karnes*, 398 F.3d 868, 873 (6th Cir. 2005). The moving party is not required to file affidavits or other similar materials negating a claim on which its opponent bears the burden of proof, so long as the movant relies upon the absence of the essential element in the pleadings, depositions, answers to interrogatories, and admissions on file. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party must "show that the non-moving party has

---

[7] Plaintiffs allege Defendants improperly took a tip credit from their overtime pay when they performed non-tipped duties that were related to their tipped occupations for more than 20% of their workweek, which work took them above 40 hours for the week. Plaintiffs' overtime allegations are based on the nature of the work they performed when working more than 40 hours in a workweek and not on the calculation of the overtime amounts.

10

(4:17CV1535)

failed to establish an essential element of his case upon which he would bear the ultimate burden of proof at trial." *Guarino v. Brookfield Twp. Trustees.*, 980 F.2d 399, 403 (6th Cir. 1992).

Once the movant makes a properly supported motion, the burden shifts to the non-moving party to demonstrate the existence of genuine dispute. An opposing party may not simply rely on its pleadings. Rather, it must "produce evidence that results in a conflict of material fact to be resolved by a jury." *Cox v. Ky. Dep't. of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995). The non-moving party must, to defeat the motion, "show that there is doubt as to the material facts and that the record, taken as a whole, does not lead to a judgment for the movant." *Guarino*, 980 F.2d at 403. In reviewing a motion for summary judgment, the court must view the evidence in the light most favorable to the non-moving party when deciding whether a genuine issue of material fact exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970).

The United States Supreme Court, in deciding *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986), stated that in order for a motion for summary judgment to be granted, there must be no genuine issue of material fact. *Id.* at 248. The existence of some mere factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. *Scott v. Harris*, 550 U.S. 372, 380 (2007). A fact is "material" only if its resolution will affect the outcome of the lawsuit. In determining whether a factual issue is "genuine," the court must decide whether the evidence is such that reasonable jurors could find that the non-moving party is entitled to a verdict. *Id.* Summary judgment "will not lie . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* To withstand

(4:17CV1535)

summary judgment, the non-movant must show sufficient evidence to create a genuine issue of material fact. *Klepper v. First Am. Bank*, 916 F.2d 337, 342 (6th Cir. 1990). The existence of a mere scintilla of evidence in support of the non-moving party's position ordinarily will not be sufficient to defeat a motion for summary judgment. *Id.*

### III. Analysis

Defendants move for summary judgment on Plaintiffs' FLSA claims based on their allegations that Defendants improperly take a tip credit the day of an event for work Plaintiffs perform before and after the banquet or party. The FLSA tip-credit exemption applies to tipped employees. The FLSA defines a "tipped employee" as "any employee engaged in an *occupation* in which he customarily and regularly receives more than $30 a month in tips." 29 U.S.C. § 203(t) (emphasis added). The DOL regulations define "tip" as "a sum presented by a customer as a gift or gratuity in recognition of some service performed for him." 29 C.F.R. § 531.52. Section 531.56(e), 29 C.F.R. explains how this definition applies to employees working "dual jobs" -- workers who engage in both tipped and non-tipped work:

> (e) Dual jobs. In some situations an employee is employed in a dual job, as for example, where a maintenance man in a hotel also serves as a waiter. In such a situation the employee, if he customarily and regularly receives at least $30 a month in tips for his work as a waiter, is a tipped employee only with respect to his employment as a waiter. He is employed in two *occupations*, and no tip credit can be taken for his hours of employment in his *occupation* of maintenance man. Such a situation is distinguishable from that of a waitress who spends part of her time cleaning and setting tables, toasting bread, making coffee and occasionally washing dishes or glasses. It is likewise distinguishable from the counterman who also prepares his own short orders or who, as part of a group of countermen, takes a turn as a short order cook for the group. Such related duties in an *occupation* that is a tipped *occupation* need not by themselves be directed toward producing tips.

12

(4:17CV1535)

Under *Auer v. Robbins*, 519 U.S. 452 (1997),[8] the Court is required to give controlling weight to an agency's interpretation of its own regulations unless that interpretation is "plainly erroneous or inconsistent with the regulation." *Id.* at 461; *see also Bowles Seminole Rock & Sand Co.*, 325 U.S. 410 (1945).

Plaintiffs' claims are based solely on the allegation that the set-up work performed before and after an event on the day of the event are non-tipped duties. They cite to § 30d00(f) of the Field Operations Handbook ("FOH"), created by the Department of Labor ("DOL") in 1988, to support their argument that a tip credit cannot be taken for time spent on non-tipped duties in the banquet setting:

> (2)  29 CFR 531.56(e) permits the employer to take a tip credit for time spent in duties related to the tipped occupation of an employee, even though such duties are not by themselves directed toward producing tips, provided such related duties are incidental to the regular duties of the tipped employees and are generally assigned to the tipped employee. For example, duties related to the tipped occupation may include a server who does preparatory or closing activities, rolls silverware and fills salt and pepper shakers while the restaurant is open, cleans and sets tables, makes coffee, and occa
>
> (3)  However, where the facts indicate that tipped employees spend a substantial amount of time (*i.e.*, in excess of 20 percent of the hours worked in the tipped occupation in the workweek) performing such related duties, no tip credit may be taken for the time spent in those duties. All related duties count toward the 20 percent tolerance.

*See* FOH (ECF No. 40-2) at PageID #: 557.

---

[8] The Court notes that this term the U.S. Supreme Court has agreed to consider overruling *Auer* and *Seminole Rock*. *See Kisor v. Wilkie*, 139 S. Ct. 657 (2018) (granting certiorari on the question of whether *Auer* should be overruled).

13

The 1988 FOH's interpretation contemplates a two-step process for an employee to prove that an employer is in violation of the law. First, the employee must prove that the duties complained of are not tip-producing. After the employee clears the hurdle of showing that the duties are non-tipped duties, the employee then must prove that more than 20 percent of her workweek was spent performing these non-tipped duties and the employer took a tip credit for that time. If the employee can provide sufficient evidence on both steps, then the employer has allegedly violated the FLSA. In their Memorandum in Opposition (ECF No. 43-1), Plaintiffs focus on the second step and how much time they spend on alleged non-tipped duties.[9] In doing so, they skip the first step of the analysis that requires them to show that these duties are not tip-producing duties. Rather, Plaintiffs simply assume that the duties they allege they spend more than 20 percent of their time performing are non-tipped duties without any evidence or analysis. This assumption stems from their belief that if a duty is not tip-producing for a restaurant server or bartender, then it is also not tip-producing for a banquet server or bartender. This not only ignores the inherent differences between a restaurant and a banquet hall, but also ignores how a tip-producing duty is determined. Because of the difference in the way the work is

---

[9] *See, e.g.*, Declaration of Jessica Matusky (ECF No. 29-1) at PageID #: 402, ¶ 10 (more than 50% of Matusky's event shifts were dedicated to set-up and take-down duties) and PageID #: at 400-401, ¶ 7 (providing an example where Matusky worked 10.98 total hours, and 5.98 hours, or 54% of her time that day was performing set-up and take-down duties before and after an event that lasted 5 hours); Declaration of John Stahl (ECF No. 29-5) at PageID #: 409, ¶ 10 (more than 50% of Stahl's event shifts were dedicated to set-up and take-down duties) and PageID #: 407-408, ¶¶ 6-8 (providing examples where Stahl spent 4.15 hours (48%) performing set-up and take-down functions for a 4.5 hour event, 4.57 hours (48%) setting-up and taking-down a 5 hour event, and 5.33 hours (57%) setting up and taking down a 4 hour event).

(4:17CV1535)

billed at a banquet hall as opposed to a restaurant, whether a duty is tipped or non-tipped has to be evaluated differently for the banquet setting than for the restaurant setting, even though the duties of a banquet employee and a restaurant employee may overlap.

On November 8, 2018, however, the DOL issued an opinion letter. Wage and Hour Division ("WHD") of the DOL , Opinion Letter FLSA2018-27 (Nov. 8, 2018). Under the 2018 interpretation, employers are instructed to consult the "Tasks" section of the Occupational Information Network ("O*NET"), an online job duty database.[10] If a duty is listed as "core" or "supplemental" to the tipped occupation in this database, then it "shall be considered directly related to the tip-producing duties of that occupation" and "[n]o limitation shall be placed on the amount of these duties that may be performed whether or not they involve direct customer service, as long as they are performed contemporaneously with the duties involving direct service to customers or for a reasonable time immediately before or after performing such direct-service duties." Employers may not take a tip credit for tasks not listed on the O*NET task list.

Section 30d00(f) of the FOH currently reads as follows:

(2)  29 CFR 531.56(e) permits the employer to take a tip credit for any time the employee spends in duties related to the tipped occupation, even though such duties are not themselves directed toward producing tips.

(3)  WHD staff will consult the Occupational Information Network (O*NET), an online source of occupational information, and 29 CFR 531.56(e) to determine whether duties are related or unrelated to the tip-producing occupation. Duties will be considered related to the tipped occupation when listed as "core" or "supplemental" under the "Tasks" section of the "Details" tab for the appropriate tip-producing occupation in O*NET.

---

[10] http://online.onetcenter.org (last visited March 28, 2019).

(4:17CV1535)

      a.      An employer may take a tip credit for any amount of time that an employee spends on related, non-tipped duties performed contemporaneously with the tipped duties -- or for a reasonable time immediately before or after performing the tipped duties -- regardless whether those duties involve direct customer service. *See* WHD Opinion Letter WH-502 (March 28, 1980), which concludes that a server's time spent performing related duties (*e.g.*, vacuuming) after restaurant closing is subject to a tip credit. For example, the core tasks currently listed in O*NET for waiters and waitresses (*see* [the O*NET Summary Report for waiters and waitresses](#)) include: cleaning tables or counters after patrons have finished dining; preparing tables for meals, which encompasses setting up items such as linens, silverware, and glassware; and stocking service areas with supplies such as coffee, food, tableware, and linens. In addition, O*NET lists garnishing and decorating dishes in preparation for serving as a supplemental task for waiters and waitresses. An employer may take a tip credit for any amount of time a waiter or waitress who is a tipped employee spends performing these related duties.

      b.      The WHD recognizes that there will be unique or newly emerging occupations that qualify as tipped occupations under the FLSA for which there is no O*NET description. *See, e.g.*, [WHD Opinion Letter FLSA2008-18 (December 19, 2008)](#) regarding itamae-sushi chefs and teppanyaki chefs. For such tipped occupations, the duties usually and customarily performed by employees in that specific occupation shall be considered related duties as long as they are consistent with the related duties performed in similar O*NET occupations. For example, in the case of unique occupations such as teppanyaki chefs, the related duties would be those that are included in the tasks set out in O*NET for counter attendants in the restaurant industry.

Defendants cite the DOL's O*NET listing of tasks for servers and bartenders to demonstrate that the duties Plaintiffs argue are non-tipped are all related to Plaintiffs' tipped occupations as banquet servers and/or bartenders. The Summary Report for Waiters and Waitresses covers the job title "banquet server" and sets forth a list of 25 "tasks" related to that occupation. *See* O*NET OnLine Summary Report for 35-3031.00 - Waiters and Waitresses,

16

(4:17CV1535)

https://www.onetonline.org/link/summary/35-3031.00 (last visited March 28, 2019). Included on this list is "[p]erform cleaning duties, such as sweeping and mopping floors, vacuuming carpet, tidying up server station, taking out trash, or checking and cleaning bathroom." *Id.* The "detailed work activities" list includes "[a]rrange tables or dining areas," "[c]lean food service areas," and "[c]lean food preparation areas, facilities, or equipment." *Id.*

Likewise, the Summary Report for Bartender covers the job title "banquet bartender" and sets forth a list of 20 "tasks" related to the occupation of bartender, including "[c]lean glasses, utensils, and bar equipment," "[c]lean bars, work areas, and tables," "[p]lan, organize, and control the operations of a cocktail lounge or bar," and "[a]rrange bottles and glasses to make attractive displays." *See* O*NET OnLine Summary Report for 35-3011.00 - Bartenders https://www.onetonline.org/link/summary/35-3011.00 (last visited March 28, 2019). Under "Detailed Work Activities," the Summary Report includes "[c]lean tableware," "[c]lean food service areas," and "[a]rrange tables or dining areas" among the work activities attributable to a bartender. *Id.* Therefore, based on data compiled for and utilized by the DOL from banquet servers and bartenders themselves, tasks related to Plaintiffs' tipped occupations include cleaning the food service area, cleaning and restocking bathrooms, and arranging the dining areas. The duties Plaintiffs' argue are non-tipped are all related to Plaintiffs' tipped occupations as banquet servers and/or bartenders.

Plaintiffs' claim that the duties they perform before and after the event on the day of the event are not tipped duties and that they should be paid at the minimum wage for those duties. Plaintiffs' claims fail as a matter of law because all of the duties they were required to perform,

17

(4:17CV1535)

particularly on the day of an event, are tip-producing duties in the context of a banquet setting. Plaintiffs admit in their depositions that all of the alleged non-tipped duties that they performed were related to their tipped occupation and would become tipped work once the first guest arrived at the event. ECF No. 27-1 at PageID #: 174, Pgs. 33-34; PageID #: 177, Pgs. 47-48; PageID #: 178, Pg. 51; PageID #: 184, Pgs. 73-74; ECF No. 27-2 at PageID #: 221-22, Pgs. 9-14; PageID #: 232, Pgs. 53-54; ECF No. 27-3 at PageID #: 276, Pgs. 22-23; PageID #: 277, Pgs. 25-28; PageID #: 288, Pgs. 71-72. Whether a duty is tipped work has to be determined based on the context of the work performed and whether the customer provides a tip for the service. Plaintiffs' claims fail because the tip that Plaintiffs receive is based on the bill for the entire event, including charges for the final preparation beforehand and the clean-up after on the day of the event. Accordingly, these duties are tip-producing and Defendants can take a tip credit for this work.

The Court recognizes that the Sixth Circuit has not afforded the FOH any type of deference or binding effect in relation to its interpretation of the FLSA. *See Stein v. HHGREGG, Inc.*, 873 F.3d 523, 531-32 (6th Cir. 2017) (FOH and DOL opinion letters not controlling or entitled to deference under *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842-44 (1984)); *Myers v. Copper Cellar Corp.*, 192 F.3d 546, 554 (6th Cir. 1999) (although the FOH and DOL opinion letters do not bind the courts, they nonetheless provide some persuasive authority because they are issued by the government agency responsible for enforcement of the federal wage and hour laws). There is no reason for this Court to deviate from the holdings of the Sixth Circuit based on non-binding decisions by other courts outside this

(4:17CV1535)

Circuit.[11] Indeed, this is consistent with the WHD of the DOL itself, which states that the FOH "is not used as a device for establishing interpretative policy." *See* https://www.dol.gov/whd/foh/ (last visited March 28, 2019). Finally, the FOH interpretation is inconsistent with the plain language of the FLSA and related DOL regulations in that it focuses on an employee's individual duties instead of her overall occupation. Both the FLSA and the DOL regulations are written in terms of "occupation" as opposed to "duty." *See* 29 U.S.C. § 203(t); 29 C.F.R. 531.56(e).

### IV. Conclusion

Viewing Plaintiffs' probative evidence and all reasonable inferences drawn therefrom in the light most favorable to Plaintiffs,

Defendants' Motion for Summary Judgment (ECF No. 40) is granted.

IT IS SO ORDERED.

|    March 29, 2019    |    */s/ Benita Y. Pearson*    |
|---|---|
| Date | Benita Y. Pearson<br>United States District Judge |

---

[11] Plaintiffs cite the following cases that have applied the "20 percent" rule to tipped employees in the restaurant setting that were decided at the motion to dismiss stage: *Fast v. Applebee's Int'l, Inc.*, 638 F.3d 872, 881 (8th Cir. 2011) (holding that its decision was not determining whether the duties alleged were tipped or non-tipped duties, just that the FOH interpretation of the FLSA governed the case), *cert. denied*, 565 U.S. 1156 (2012); *Foster v. New Apple, Inc.*, No. 0:16-cv-3705-BHH, 2017 WL 10504645, at *7 (D.S.C. Aug. 8, 2017) ("aside from any deference due to the agency's use of the twenty percent rule, such a standard would be a perfectly valid interpretation of the FLSA and § 531.56(e), even if Plaintiff presented it as a completely novel theory for the Court's consideration") (quoting *Irvine v. Destination Wild Dunes Mgmt., Inc.*, 106 F. Supp.3d 729, 734 (D.S.C. 2015)); and, *Fiumano v. Metro Diner Mgmt. LLC*, No. 17-465, 2018 U.S. Dist. LEXIS 41353, at *11-12 (E.D.Pa. March 12, 2018). *See* ECF No. 43-1 at PageID #: 607.

19